**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| In re: <br><br> Cambrian Holding Company, Inc., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 19-51200 <br><br> (Jointly Administered) |
| Ellen Arvin Kennedy, solely in her capacity as Liquidating Trustee of the Cambrian Liquidating Trust, <br><br> Plaintiff, <br><br> v. <br><br> RELIANCE STANDARD LIFE INSURANCE COMPANY <br><br> Serve: <br> CT CORPORATION SYSTEM <br> 306 W. MAIN STREET, SUITE 512 <br> FRANKFORT, KY 40601 <br><br> Defendant. | Adv. No. _____ |

**COMPLAINT TO AVOID TRANSFERS
PURSUANT TO 11 U.S.C. §§ 547, 548, 549 AND 502 AND TO RECOVER
PROPERTY TRANSFERRED PURSUANT TO 11 U.S.C. § 550**

Ellen Arvin Kennedy, solely in her capacity as Liquidating Trustee (the "Trustee" or the "Plaintiff") of the Cambrian Liquidating Trust (the "Trust"), by and through her undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against RELIANCE STANDARD LIFE INSURANCE COMPANY, (the "Defendant"), and in support thereof alleges upon information and belief that:

---

[1] The "Debtors" in these chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Cambrian Holding Company, Inc. (8203), Cambrian Coal LLC (3394), Apex Energy, Inc. (3455), C.W. Augering, Inc. (2875), Marshall Resources, Inc. (9735), PLM Holding Company LLC (7427), Bear Branch Coal LLC (0674), Clintwood Elkhorn Mining LLC (6910), Gatliff Coal LLC (5768), Perry County Coal LLC (4382), Ray Coal LLC (0981), Whitaker Coal LLC (8270), Pike-Letcher Land LLC (8952), Premier Elkhorn Coal LLC (8951), Raven Rock Development LLC (1351), Rich Mountain Coal LLC (1974), S.T. & T. Leasing, Inc. (0340), T.C. Leasing, Inc. (7705), and Shelby Resources, LLC (5085).

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the Debtors' bankruptcy proceedings pursuant to 11 U.S.C. §§ 547 and 550. Subject to proof, Plaintiff also seeks to avoid and recover pursuant to 11 U.S.C. § 548 any transfers that may have been fraudulent conveyances and pursuant to 11 U.S.C. § 549 any unauthorized transfers that cleared post-petition. To the extent that Defendant has filed a proof of claim or has a claim listed on the Debtors' schedules as undisputed, liquidated, and not contingent, or has otherwise requested payment from the Debtors or the Debtors' chapter 11 estate (collectively, the "Claims"), this Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason including, but not limited to, 11 U.S.C. § 502 (a) through (j) ("Section 502"), and such rights are expressly reserved. Notwithstanding this reservation of rights, certain relief pursuant to Section 502 is sought by Plaintiff herein as further stated below.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) because this adversary proceeding arises under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and arises in and relates to a case under the Bankruptcy Code.

3. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, 549 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2). The Court may enter final orders for the matters contained herein.

5. Pursuant to Fed. R. Bankr. P. 7008, Plaintiff consents to this Court's entry of final orders or judgments in this proceeding.

6. Venue is proper in the Eastern District of Kentucky pursuant to 28 U.S.C. §§ 1408 and 1409.

7. Upon information and belief, this Complaint relates to the Debtor, Clintwood Elkhorn Mining LLC, Case No. 19-51214-grs, Premier Elkhorn Coal LLC, Case No. 19-51203-grs, Perry County Coal, Case No. 19-51217-grs, and S. T. & T. Leasing, Inc., Case No. 19-51207-grs.

## PROCEDURAL BACKGROUND

8. On June 16, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

9. On February 16, 2021, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming the Third Amended Joint Plan of Orderly Liquidation* (the "Confirmation Order") confirming the Debtors' Third Amended Joint Plan of Orderly Liquidation (the "Plan"). [Docket No. 1542].

10. In the Confirmation Order, the Court approved the appointment of the Trustee as Liquidating Trustee, with the Trustee to be considered to have been appointed as of February 12, 2021.

11. The Effective Date of the Plan was March 3, 2021. [Docket No. 1562].

12. On March 3, 2021, the Debtors executed the Liquidating Trust Agreement.

13. Pursuant to the Plan, creditors of the Debtors are impaired and will not be paid in full.

## THE PARTIES

14. Plaintiff is a resident of Lexington, Fayette County, Kentucky. Plaintiff was appointed trustee of the Trust pursuant to the Confirmation Order, Plan, and Liquidating Trust Agreement. On the Effective Date, the Debtors transferred to the Trust assets including the causes of action pursued herein. Pursuant to the Plan and Liquidating Trust Agreement, the Trustee is authorized, among other things, to prosecute, settle, dismiss, abandon, or otherwise dispose of causes of action arising under sections 510, 542 through 551 and 553 of the Bankruptcy Code.

15. The Debtors are comprised a group of nineteen (19) privately held companies. Cambrian Holding Company, Inc. ("Cambrian Holding") is the ultimate parent of the Debtors, except for Shelby Resources, LLC ("Shelby Resources"). As of the Petition Date, Mark Campbell owned 100% of Cambrian Holding. Cambrian Holding, in turn, wholly owned Cambrian Coal LLC ("Cambrian Coal"). Cambrian Coal, in turn, wholly owned Apex Energy, Inc, C.W. Augering, Inc., Marshall Resources, Inc., S.T. & T. Leasing, Inc., T.C. Leasing, Inc., and PLM Holding Company LLC ("PLM"). PLM, in turn, wholly owned Bear Branch Coal LLC, Clintwood Elkhorn Mining LLC, Gatliff Coal LLC, Pike-Letcher Land LLC, Premier Elkhorn Coal LLC, Raven Rock Development LLC, Rich Mountain Coal LLC, and Perry County Coal LLC ("Perry Coal"). Perry Coal wholly owned Ray Coal LLC which, in turn, wholly owns Whitaker Coal LLC. As of the Petition Date, Mark Campbell owned 100% of Shelby Resources. Prior to the Petition Date, James H. Booth and Ted McGinnis held ownership interests in Cambrian Holding and Shelby Resources. All of the Debtors are incorporated or

4

organized in Kentucky, with primary administrative offices in Belcher, Corbin, and Lexington, Kentucky.

16. Upon information and belief, Defendant is a foreign corporation organized under the laws of Illinois and doing business at 1700 Market Street, Suite 1200, Philadelphia, PA 19103. Defendant's agent for service of process is CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, KY 40601.

## FACTUAL BACKGROUND

17. Prior to the Petition Date, the Debtors' core business was producing and processing metallurgical (or "met") coal and thermal (or "steam") coal for use by utility providers and industrial companies located primarily in the eastern United States and Canada. The Debtors began in 1991 and, over time, acquired various mines and mining-related assets from major coal corporations, including Marshall Resources, Arch Coal, and TECO. The Debtors mined, shipped, and marketed coal from underground and surface mines located in Kentucky and Virginia. As of the Petition Date, the Debtors operated at three primary mining facilities in Kentucky and Virginia: (i) Perry County Coal, located near Hazard, Kentucky; (ii) Premier Elkhorn Coal LLC, located near Dorton, Kentucky; and (iii) Clintwood Elkhorn Mining LLC, located in eastern Kentucky and western Virginia (collectively, the "Cambrian Facilities").

18. Prior to the Petition Date, in the ordinary course of business, the Debtors, as coal mining operators, maintained business relationships with various business entities, through which the Debtors regularly purchased goods and services.

19. As coal mining operators, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers, and distributors. The Debtors, as coal mining operators, also regularly paid for services used to facilitate their coal mining operations.

20. The Debtors' financial difficulties leading up to the Bankruptcy Case are attributable to a number of different factors. In 2015, pursuant to an acquisition of TECO by Cambrian Coal (the "TECO Acquisition"), the Debtors acquired Perry County Coal, Premier Elkhorn, and Clintwood Elkhorn. The TECO Acquisition required the Debtors to cash collateralize bonding obligations in excess of $40,000,000 for workers' compensation and black lung liabilities that TECO had previously self-insured (an option not available to the Debtors) and obligated the Debtors to pay, upon certain specified conditions and contingencies, up to $60,000,000 to TECO over four years.[2] In connection with the TECO Acquisition, the Debtors undertook a significant capital raising effort to place cash back on the Debtors' balance sheet to provide liquidity. The Debtors' attempts to raise liquidity were hampered by a significant downturn in the market. While the TECO Acquisition effectively doubled the size of the Debtors, due to the inability of the Debtors to increase their liquidity, the Debtors were unable to meet working capital requirements which led to liquidity challenges.

21. The North American coal industry is intensely competitive and over the past several years, market forces in the industry affected a number of coal companies, many of which have filed for chapter 11. General distress affecting the domestic U.S. thermal coal industry has produced a sustained low-price environment. In addition, coal mining requires a high level of capital expenditure to sustain production and to maintain safety requirements.

---

[2] The $60,000,000 contingency payment amount was later reduced by agreement to $19 million. The full amount remains outstanding. Cambrian missed the first payment in the amount of $3 million on March 31, 2019 and TECO recently filed suit to collect the same.

6

22. Although the Debtors previously targeted a total of 4.2 million tons in production in 2018, lack of capital caused actual production to be only 2.8 million tons. This diminished production and sales volume has severely limited the Debtors' liquidity and has exacerbated production issues in 2019 and prevented them from implementing planned capital improvements.

23. With production and related costs significantly higher than expected and thermal coal prices significantly lower than expected, the Debtors experienced significant decreases in cash flow over several years. The liquidity crunch triggered financial covenant and other defaults under the Debtors' loan agreements. While the Debtors' revenues increased after the TECO Acquisition, from $131,722,798 in 2015 to $272,302,958 in 2017, revenues decreased in 2018 to $228,470,375. The Debtors recorded net losses for 2015, 2016, 2017, and 2018.

24. After the TECO Acquisition, the Debtors undertook various efforts to return to a positive cashflow, including: (i) to the extent possible and economically feasible, engaging in optimal downsizing strategies, such as (x) idling or closing certain mining operations and extending the life of service equipment and (y) reducing the Debtors' labor costs, including a limited number of layoffs and wage decreases; (ii) entering into forbearance agreements with their lenders to allow the Debtors to sell their assets as a going concern, locate replacement or mezzanine financing, raise capital, or engage in another financially-viable transaction; and (iii) retaining Jefferies LLC ("Jefferies") to assist the Debtors with potential capital raising and M&A opportunities.

25. Between 2015 and the Petition Date, the Debtors idled their operations at the E41 Mine at Perry Coal and several surface mines and deep mining complexes at both Premier Elkhorn and Clintwood Elkhorn. The idling and closing of these operations resulted in cost

savings but, unfortunately, the operations continued to generate losses due to ongoing reclamation and other maintenance costs. The Debtors' idled or closed mining complexes were not profitable and had no reasonable prospect of becoming profitable. The Debtors also negotiated with their lenders to obtain a standstill on their continuing servicing obligations on those loans.

26. Notwithstanding these efforts, the Debtors were unable to overcome the pressures placed on their profit margins from steadily declining coal prices (along with burdensome regulations and the accompanying decline in demand for coal) and from the overwhelming debt burden that they faced following the TECO Acquisition, all of which contributed to the Debtors' substantial negative cashflow and inability to consummate a value-enhancing transaction.

27. As of the Petition Date, the Debtors maintained forty-four (44) bank accounts, (collectively, the "Bank Accounts") at Community Trust Bank and Peoples Bank and Trust Co. (collectively, the "Banks"). The Debtors operated a cash management system (the "Cash Management System") to coordinate the flow of funds through the Debtors' accounts. This Cash Management System began with cash generated as a result of the Debtors' coal mining operations in Eastern Kentucky and Virginia. These funds were primarily generated by three debtor entities: Clintwood Elkhorn Mining, LLC ("Clintwood"), Premier Elkhorn Coal LLC ("Premier"), and Perry County Coal LLC ("Perry," and together with Clintwood and Premier, the "Operating Entities"). The Operating Entities mined, sold, and collected revenue on coal mined from various Debtors' mining locations. These funds were deposited into the Operating Entities' general checking accounts, where the funds were then used to pay operational expenses of the Operating Entities or disbursed among other Debtors' accounts to sustain the

Debtors' operational needs, including, but not limited to, the payment of operating expenses, payroll, administrative expenses, utilities, and royalties.

28. During the ninety (90) days before the Petition Date, that is between March 21, 2019 and June 19, 2019 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfer, direct deposits, or otherwise to certain entities.

29. Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the Debtors to Defendant within the Preference Period and subsequent to the Petition Date without Bankruptcy Code or Court authority therefor.

30. Plaintiff has determined that the Debtor Clintwood Elkhorn Mining LLC, made transfer(s) of an interest of its property to or for the benefit of Defendant during the Preference Period, and/or subsequent to the Petition Date without Bankruptcy Code or Court authority, through payments aggregating an amount not less than $24,770.30 (the "Transfer" and/or "Transfers").

31. Plaintiff has determined that the Debtor Premier Elkhorn Coal LLC, made transfer(s) of an interest of its property to or for the benefit of Defendant during the Preference Period, and/or subsequent to the Petition Date without Bankruptcy Code or Court authority, through payments aggregating an amount not less than $11,699.32 (the "Transfer" and/or "Transfers").

32. Plaintiff has determined that the Debtor Perry County Coal made transfer(s) of an interest of its property to or for the benefit of Defendant during the Preference Period, and/or

subsequent to the Petition Date without Bankruptcy Code or Court authority, through payments aggregating an amount not less than $46,879.46 (the "Transfer" and/or "Transfers").

33. Plaintiff has determined that the Debtor S. T. & T. Leasing, Inc. made transfer(s) of an interest of its property to or for the benefit of Defendant during the Preference Period, and/or subsequent to the Petition Date without Bankruptcy Code or Court authority, through payments aggregating an amount not less than $20,437.00 (the "Transfer" and/or "Transfers").

34. During the course of their relationship, the Debtors and Defendant conducted business with one another up to and through the Petition Date.

35. The details of each of the Transfers are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit "A." Such details include "Check Number," "Payment Amount" and "Payment Date." During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period and/or subsequent to the Petition Date without Bankruptcy Code or Court authority therefor. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves her right to amend this original Complaint to include: (i) further information regarding the Transfers, (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action (*e.g.*, but not exclusively, claims arising under 11 U.S.C. §§ 542, 544 and/or 545 (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

36. Plaintiff acknowledges that some of the Transfers might be subject to defenses under Bankruptcy Code section 547(c), for which Defendant bears the burden of proof under Section 547(g).

37. Pursuant to Bankruptcy Code section 547(b), Plaintiff states that she was appointed as Trustee just over three months prior to the statutory deadline to file this proceeding. As of the filing of this Complaint, Plaintiff has been unable to obtain all records necessary to perform a reasonable analysis of Defendants' potential defenses under the circumstances. Plaintiff will continue to assess information relevant to Defendants' possible defenses as this action proceeds.

## **CLAIMS FOR RELIEF**

### **COUNT I**

### **(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

38. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

39. Each Transfer was made to Defendant by the Debtors, Clintwood Elkhorn Mining LLC, Premier Elkhorn Coal LLC, Perry County Coal and S. T. & T. Leasing, Inc.

40. Each Transfer was paid from one or more of the Bank Accounts associated with the Debtors as described *supra.*

41. Each Transfer constituted a transfer of an interest in property of the Debtors, Clintwood Elkhorn Mining LLC, Premier Elkhorn Coal LLC, Perry County Coal, and S. T. & T. Leasing, Inc.

42. During the Preference Period, Defendant was a creditor at the time of each Transfer by virtue of supplying goods and/or services to the Debtors for which the Debtors were obligated to pay.

43. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtors to Defendant.

44. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtors to Defendant before such Transfers were made, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtors.

45. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

46. Each Transfer was made during the Preference Period.

47. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estate.

48. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

**COUNT II**

**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

49. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

50. Subject to proof, Plaintiff pleads in the alternative that to the extent one or more of the Transfers as identified on Exhibit "A" were not on account of an antecedent debt or were a prepayment for goods and/or services subsequently received, the Debtors did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

    A.    The Debtors were insolvent on the date that the Transfer(s) were made or became insolvent as a result of the Transfer(s); or

    B.    The Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors who made or for whose benefit the Transfer(s) were made was an unreasonably small capital; or

    C.    The Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

51. In accordance with the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

**COUNT III**

**(Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)**

52. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

53. Subject to proof, Plaintiff pleads that to the extent any of the Transfer(s) made by the Debtors to Defendant as identified in Exhibit "A" attached hereto and incorporated herein by reference were transfer(s) of an interest of the Debtors' property that cleared the Debtors' Bank Account(s) after the Petition Date (the "Post-Petition Transfers"), the Post-Petition Transfer(s)

were never authorized by the Court or under the Bankruptcy Code and, thus in accordance with the foregoing, the Post-Petition Transfers are avoidable pursuant to 11 U.S.C. § 549.

## COUNT IV

### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

54. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

55. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b), any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548, and any Post-Petition Transfers pursuant to 11 U.S.C. § 549. The Transfers, any Potentially Fraudulent Transfers, and any Post-Petition Transfers are collectively referred to herein as "All Avoided Transfers."

56. Defendant was the initial transferee of All Avoided Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit All Avoided Transfers were made.

57. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant All Avoided Transfers, plus interest thereon to the date of payment and the costs of this action.

## COUNT V

### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

58. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

59. Defendant is an entity from which property is recoverable under 11 U.S.C. § 550.

60. Defendant is a transferee of All Avoided Transfers avoidable under 11 U.S.C. §§ 547, 548 and/or 549.

61. Defendant has not paid the amount of All Avoided Transfers, or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

62.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estate or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of All Avoided Transfers, plus interest thereon and costs.

63.     Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estate or Plaintiff previously allowed by the Debtors or Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of All Avoided Transfers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant it the following relief against Defendant:

As to Counts I through V, that the Court enter a judgment against Defendant:

A. That All Avoided Transfers avoidable under 11 U.S.C. §§ 547, 548 and/or 549 in the total aggregate amount of not less than $103,786.08 be avoided;

B. That All Avoided Transfers, to the extent that they are avoided pursuant to 11 U.S.C. § 547, 548 and/or 549, be recovered by Plaintiff pursuant to 11 U.S.C. § 550;

C. Disallowing, in accordance with 11 U.S.C. § 502(d), any Claims held by Defendant and/or its assignee until Defendant satisfies the judgment;

D. Disallowing, in accordance with 11 U.S.C. § 502(j), any Claims held by Defendant and/or its assignee until Defendant satisfies the judgment;

E. Awarding pre-judgment interest at the maximum legal rate running from the date of the Complaint to the date of judgment herein;

F.  Awarding post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

G.  Requiring Defendant to pay forthwith the judgment amount awarded in favor of Plaintiff; and

H.  Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated:  JUNE 14, 2021　　　　　　　　　DINSMORE & SHOHL LLP

　　　　　　　　　　　　　　　　　　By:　*/s/ John M. Spires, Esq.*
　　　　　　　　　　　　　　　　　　　　Ellen Arvin Kennedy, Esq.
　　　　　　　　　　　　　　　　　　　　John Spires, Esq.
　　　　　　　　　　　　　　　　　　　　100 West Main Street, Suite 900
　　　　　　　　　　　　　　　　　　　　Lexington, KY 40507
　　　　　　　　　　　　　　　　　　　　Phone: (859) 425-1000
　　　　　　　　　　　　　　　　　　　　Fax: (859) 425-1099
　　　　　　　　　　　　　　　　　　　　Email: ellen.kennedy@dinsmore.com
　　　　　　　　　　　　　　　　　　　　　　　　john.spires@dinsmore.com
　　　　　　　　　　　　　　　　　　　　*Counsel to Ellen Arvin Kennedy, solely in her capacity as Liquidating Trustee of the Cambrian Liquidating Trust*

22105087.1

**Statement of Account**

**Exhibit "A"**

Clintwood Elkhorn Mining LLC

| Vendor Name | Check # | Check Date | Payment Amount |
|---|---|---|---|
| RELIANCE STANDARD LIFE INSURANCE | 00092050 | 3/22/2019 | $8,757.70 |
| RELIANCE STANDARD LIFE INSURANCE | 00092429 | 5/3/2019 | $8,245.46 |
| RELIANCE STANDARD LIFE INSURANCE | 00092771 | 5/31/2019 | $7,767.14 |
| TOTAL | | | $24,770.30 |

Premier Elkhorn Coal LLC

| Vendor Name | Check # | Check Date | Payment Amount |
|---|---|---|---|
| RELIANCE STANDARD LIFE INSURANCE | 00078641 | 3/22/2019 | $3,779.24 |
| RELIANCE STANDARD LIFE INSURANCE | 00078847 | 5/6/2019 | $3,960.04 |
| RELIANCE STANDARD LIFE INSURANCE | 00079051 | 5/31/2019 | $3,960.04 |
| TOTAL | | | $11,699.32 |

Perry County Coal LLC

| Vendor Name | Check # | Check Date | Payment Amount |
|---|---|---|---|
| RELIANCE STANDARD LIFE INSURANCE | 00087489 | 3/22/2019 | $16,224.69 |
| RELIANCE STANDARD LIFE INSURANCE | 00087719 | 5/3/2019 | $15,313.65 |
| RELIANCE STANDARD LIFE INSURANCE | 00087893 | 5/31/2019 | $15,341.12 |
| TOTAL | | | $46,879.46 |

S. T. & T. Leasing, Inc.

| Vendor Name | Check # | Check Date | Payment Amount |
|---|---|---|---|
| RELIANCE STANDARD LIFE INSURANCE | 00020999 | 3/22/2019 | $6,752.40 |
| RELIANCE STANDARD LIFE INSURANCE | 00021039 | 5/3/2019 | $6,842.30 |
| RELIANCE STANDARD LIFE INSURANCE | 00021086 | 5/31/2019 | $6,842.30 |
| TOTAL | | | $20,437.00 |